UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EVAN BLUM, Plaintiff, -against- MILTON AND BETTY SALOMON, et al., Defendants. | : | 06 CV 3149 (WHP) MEMORANDUM & ORDER |

WILLIAM H. PAULEY III, District Judge:

Plaintiff pro se Evan Blum ("Plaintiff" or "Blum") brings this action alleging breach of contract, breach of the duty of good faith and fair dealing, and tortious interference with contract against Defendants Milton Salomon, Betty Salomon, David Salomon, Deborah Salomon and Victor Orsinger ("Orsinger"). The Complaint alleges that Defendants used false appraisals to inflate the purchase price of a residential property. Defendants move to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer the action to the District of Rhode Island. For the reasons set forth below, this action is transferred to the District of Rhode Island pursuant to 28 U.S.C. § 1404(a).[1]

A TRUE COPY
J. MICHAEL McMAHON, CLERK
BY R. D.
DEPUTY CLERK

[1] A district court is authorized to rule on a motion to transfer venue "even if [it has] no personal jurisdiction over the defendants . . ." Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 400 n.3 (S.D.N.Y. 2004) (quoting Volk Corp. v. Art-Pak Clip Art Serv., 432 F. Supp. 1179, 1181 (S.D.N.Y. 1977)). Because this Court transfers the action to the District of Rhode Island, it need not reach the issue of personal jurisdiction.

18

BACKGROUND

In 1971, Milton and Betty Salomon purchased the property located at 222 Alton Bradford Road, Hopkinton, Rhode Island (the "Property"). (Affidavit of Milton Salomon, dated May 18, 2006 ("Milton Aff.") ¶ 2.) Blum owns an adjacent property, although he resides permanently in New York. (Affidavit of Victor Orsinger, dated May 22, 2006 ("Orsinger Aff.") ¶ 5 & Ex. A; Complaint, dated Apr. 24, 2006 ("Compl.") ¶ 1.)

Deborah Salomon, daughter of Milton and Betty and a resident of California, visited her parents at the Property in August 2005. (Affidavit of Debra Salomon, dated May 18, 2006 ("Deborah Aff.") ¶¶ 2, 8.) Blum, who also visited Rhode Island that month, was informed by Deborah that her parents were interested in selling the Property. (Affidavit of Evan Blum, dated July 26, 2006 ("Blum Aff.") ¶¶ 11, 34; Deborah Aff. ¶ 8.) On September 7, 2005, Milton and Betty sent a solicitation for offers on the Property to certain of their acquaintances. (Milton Aff. ¶ 7; Affidavit of Betty Salomon, dated May 18, 2006 ("Betty Aff.") ¶ 7 & Ex. A.) The solicitation included an asking price of $850,000 which was purportedly based on two appraisals of the Property. (Milton Aff. ¶ 7; Betty Aff. ¶ 7 & Ex. A.)

Blum visited the Salomons in Rhode Island on several occasions to negotiate a purchase of the Property. (Betty Aff. ¶¶ 8, 10; Blum Aff. ¶¶ 10, 13.) He also conducted negotiations by phone and email from New York City. (Blum Aff. ¶¶ 15, 42.) Ultimately, the parties agreed on a purchase price of $825,000. (Compl. ¶¶ 8, 13.) The Complaint alleges that certain of the Defendants assured Blum that the purchase price accurately reflected the appraisals and that Blum would receive the appraisals after the parties signed a written agreement. (Compl. ¶ 9; Blum Aff. ¶ 38.) Orsinger, a Rhode Island attorney representing the Salomons, suggested to Blum that the selling price would be adjusted if it exceeded the appraisals. (Compl. ¶ 9.)

On October 3, 2005, Blum signed the purchase agreement (the "Agreement") at Orsinger's office in Rhode Island. (Orsinger Aff. ¶ 11.) Although Blum sent a security deposit of $82,500 to Orsinger (Compl. ¶ 14; Orsinger Aff. ¶ 14), he never received copies of the two appraisals (Compl. ¶ 19).

After signing the Agreement, Blum attempted to secure financing from a New York bank. (Compl. ¶ 16.) An independent appraisal of the Property conducted by the bank valued the Property at only $450,000. (Compl. ¶ 16.) In light of the bank's appraisal, Blum requested that Defendants release him from his obligations under the contract or reduce the purchase price. (Compl. ¶ 18.) After Defendants refused these requests, Blum demanded the return of his security deposit. (Compl. ¶ 18.) This request was also denied. (Compl. ¶ 18.)

Plaintiff filed this action on April 24, 2006. On May 23, 2006, Milton and Betty Salomon filed an action against Blum for breach of the Agreement in Rhode Island state court. See Salomon v. Blum, W.C. No. 06-317. Blum removed that action to the District of Rhode Island on June 21, 2006. See Salomon v. Blum, No. 06 Civ. 289 (ECT).

## DISCUSSION

Defendants move to dismiss the Complaint or, in the alternative, to transfer this action to the District of Rhode Island pursuant to 28 U.S.C. §§ 1391(a) and 1406(a).

### I. Sections 1391(a) and 1406(a)

Section 1391(a) provides as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim

> occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). When a defendant moves to dismiss for improper venue, the burden rests with the plaintiff to show that the chosen forum is proper. See United States EPA ex rel. McKeown v. Port Auth., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001). If the chosen forum is improper, the Court has discretion to dismiss the case or to transfer the case to a district where venue is proper. 28 U.S.C. § 1406(a).

Because it is undisputed that §§ 1391(a)(1) and (a)(3) are inapposite to this action, this Court must determine whether, under § 1391(a)(2), "a substantial part of events or omissions giving rise" to Plaintiff's claim occurred in the Southern District of New York. When analyzing venue under § 1391(a)(2), this Court must conduct the following inquiry: First, the Court must "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005). Second, the Court must determine "whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether 'significant events or omissions material to [those] claim[s] . . . have occurred in the district in question.'" Daniel, 428 F.3d at 432 (quoting Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005)). This standard "may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." Sacody Techs. Inc. v. Avant, Inc., 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994); see also Concesionaria DHM, S.A. v. Int'l Fin. Corp., 307 F. Supp. 2d 553, 559 (S.D.N.Y. 2004).

Here, Plaintiff claims that Defendants used false appraisals of the Property to induce Blum to sign the Agreement. Although many events relating to the Agreement's formation occurred in Rhode Island, Blum conducted some of the negotiations from the Southern District of New York. (Blum Aff. ¶¶ 15, 42.) Blum alleges that the false appraisals were mentioned during these negotiations. (Blum Aff. ¶ 35; Pl. Mem. at 28.) Such communications are sufficient to establish venue in this district under § 1391(a)(2). See, e.g., U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 153 (2d Cir. 2001) (venue proper in the Southern District of New York when the terms of the relevant agreement were negotiated by telephone and facsimile with a party in New York); Sacody, 862 F. Supp. at 1157 (venue proper in the Southern District of New York where communications "in relation to the [contract] took place over the phone and by correspondence and facsimile between [the parties] in Massachusetts and New York, respectively"). Additionally, Plaintiff attempted to secure financing for the transaction in New York, and apparently retained a New York attorney to tender the security deposit to Orsinger. (Compl. ¶ 16; Orsinger Aff. ¶ 14 & Ex. H.) For these reasons, the Southern District of New York is an appropriate venue for this action under § 1391(a).

II. Section 1404(a)

Even when venue is proper in the Southern District of New York, the Court may transfer an action pursuant to 28 U.S.C. § 1404(a). Holmes v. Grant, No. 03 Civ. 3426 (RJH), 2006 WL 851753, at *21 (S.D.N.Y. Mar. 31, 2006); Catti v. Diamedix Corp., No. 05 Civ. 3662 (LDW), 2006 WL 515475, at *2 (E.D.N.Y. Feb. 21, 2006). Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28

U.S.C. § 1404(a). Thus, in determining whether a transfer is appropriate under § 1404(a), "courts examine: (1) whether the action could have been brought in the proposed transferee forum; and (2) whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." Flowserve Corp. v. BMCE, Inc., No. 05 Civ. 8075 (WHP), 2006 WL 2927176, at *2 (S.D.N.Y. Oct. 12, 2006) (internal quotation omitted); Clarendon Nat'l Ins. Co. v. Pascual, No. 99 Civ. 10840 (JGK) (AJP), 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000). Defendants moved to transfer under § 1406(a) rather than § 1404(a). However, the Court may order a § 1404(a) transfer sua sponte. See Lead Indus. Ass'n, Inc. v. Occupational Safety and Health Admin., 610 F.2d 70, 79 n.17 (2d Cir. 1979); Cento Pearl v. Arts & Craft Supply Inc., No. 03 Civ. 2424 (LAK), 2003 WL 1960595, at *1 (S.D.N.Y. Apr. 24, 2003); Banco de Seguros del Estado v. Employers Ins. of Wausau, 171 F. Supp. 2d 330, 332 n.5 (S.D.N.Y. 2001).

The parties do not dispute that this action could have been brought in the District of Rhode Island. The Court must therefore examine whether transfer would promote the interests of justice and the convenience of the parties. In analyzing this question, courts consider several factors, including:

> (1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative ease of access of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the forum's familiarity with the governing law; (7) trial efficiency and the interests of justice; and (8) the plaintiff's choice of forum.

Clarendon Nat'l Ins., 2000 WL 270862, at *3; accord J. Lyons & Co. v. Republic of Tea, Inc., 892 F. Supp. 486, 492 (S.D.N.Y. 1995). "There is no rigid formula for balancing these factors and no single one of them is determinative." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). "In performing the analysis the Court must, however, give due deference to the plaintiff's choice of forum which should not be disturbed unless the balance of

convenience and justice weigh heavily in favor of defendant's forum." Citigroup, 97 F. Supp. 2d at 561 (internal quotation omitted); accord Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 57 (S.D.N.Y. 2001); NBA Props., Inc. v. Salvino, Inc., No. 99 Civ. 11799 (AGS), 2000 WL 323257, at *3 (S.D.N.Y. Mar. 27, 2000).

Apart from Plaintiff's choice of forum, all of the factors favor transfer of this action to the District of Rhode Island. First, "[i]n determining the locus of operative facts, a court must look to the site of events from which the claim arises." Transatlantic Reinsurance Co. v. Cont'l Ins. Co., No. 03 Civ. 3227 (CBM), 2003 WL 22743829, at *5 (S.D.N.Y. Nov. 20, 2003) (internal quotation omitted). Most of the events from which Blum's claims arise occurred in Rhode Island. That is where the Property is located and where Blum made his initial inquiry to Deborah Salomon about a possible sale. Blum personally visited Rhode Island on multiple occasions to negotiate the contract. Blum signed the Agreement in Orsinger's Rhode Island office, and then sent the security deposit to Orsinger there. Thus, "the locus of operative facts strongly support transfer to [Rhode Island], and do not weigh in favor of a New York forum." MasterCard Int'l Inc. v. Lexcel Solutions, Inc., No. 03 Civ. 7157 (WHP), 2004 WL 1368299, at *6 (S.D.N.Y. June 16, 2004); see also United States v. Nature's Farm Prods., Inc., No. 00 Civ. 6593 (SHS), 2004 WL 1077968, at *5 (S.D.N.Y. May 13, 2004) (transferring venue where locus of operative facts occurred mainly in transferee venue).

Further, Milton and Betty Solomon are elderly, and Milton suffers from health problems. (Compl. ¶ 13; Milton Aff. ¶¶ 1, 5; Betty Aff. ¶ 1.) The burden on the Salomons to travel from Rhode Island to New York for trial would be significant. See, e.g., Joyner v. Toatley, No. 85 Civ. 3071 (MJL), 1985 WL 3118, at *4-5 (S.D.N.Y. Oct. 17, 1985) (granting motion to transfer in part because of "the advanced ages of defendants"). In addition to these

witnesses, most of the proof in this case is likely situated in Rhode Island, and Rhode Island law will govern. Although these factors are entitled to little weight, see Flowserve Corp. v. BMCE, Inc., No. 05 Civ. 8075 (WHP), 2006 WL 2927176, at *4 (S.D.N.Y. Oct. 12, 2006), to the extent they are relevant, choice of law and the location of documents nevertheless favor transfer, see MasterCard, 2004 WL 1368299, at *7.

After analyzing the relevant factors, the only factor that weighs against transferring the action is the Plaintiff's choice of forum. That is insufficient to keep the action before this Court when the remaining factors support a transfer. See Lewis v. C.R.I., Inc., No. 03 Civ. 651 (MBM), 2003 WL 1900859, at *5 (S.D.N.Y. Apr. 17, 2003) (granting motion to transfer when "the sole factor that weighs against transferring the action is the deference accorded to plaintiff's choice of forum"); Wechsler v. Macke Int'l Trade, Inc., No. 99 Civ. 5725 (AGS), 1999 WL 1261251, at *9 (S.D.N.Y. Dec. 27, 1999) ("Where, as here, there is such a tenuous connection between plaintiff's claims and the Southern District of New York, the plaintiffs choice of forum is accorded less weight."). For these reasons, transfer of this action to the District of Rhode Island would serve both the convenience of the parties and the interests of justice.

## CONCLUSION

Accordingly, this action is transferred to the District of Rhode Island pursuant to 28 U.S.C. § 1404(a). Defendants' motion to transfer the action pursuant to 28 U.S.C. § 1406(a) is denied, and the motion to dismiss is denied as moot.

Dated: December 26, 2006
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Copies mailed to*:

Evan Blum
216 East 125th Street
New York, New York 10035
*Plaintiff Pro Se*

Yoav M. Griver, Esq.
Robert Guttman, Esq.
Zeichner Ellman & Krause
575 Lexington Avenue
New York, New York 10022
*Attorneys for Defendants Milton Salomon, Betty Salomon, Deborah Salomon, and David Salomon*

A. Michael Furman, Esq.
Kaufman Borgeest & Ryan LLP
99 Park Avenue, 19th Floor
New York, NY 10016
*Attorneys for Defendant Victor Orsinger*